IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN L. WARNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-1878-D |
| VS. | § | |
| | § | |
| LEAR CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is a suit by plaintiff Kevin L. Warner ("Warner") against his former employer,

Lear Corporation ("Lear"), the Federal Mediation and Conciliation Service ("FMCS"), and

possibly against an individual FMCS mediator, identified in Warner's first amended

complaint as "John Doe mediator/Agent," *e.g.*, 1st Am. Compl. ¶ 6, arising from Warner's

termination from Lear.  For the reasons that follow, the court grants Lear's motion for

summary judgment, raises *sua sponte* that the FMCS is entitled to dismissal based on

immunity from suit, and directs Warner to respond to the dismissal of the FMCS based on

immunity, and to seek leave to amend and name a specific person in place of "John Doe

mediator/Agent."  The court also decides the remaining pending motions in this litigation.

I

Warner seeks relief against Lear under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1]  The factual background of this case is set out in two prior memorandum opinions and orders.  *See Warner v. Lear Corp.*, 2016 WL 2594465, at *1-2 (N.D. Tex. May 5, 2016) (Fitzwater, J.); *Warner v. Lear Corp.*, 2016 WL 339606, at *1-2 (N.D. Tex. Jan. 28, 2016) (Fitzwater, J.).  The court will therefore limit its discussion of the background facts and procedural history to what is pertinent to the court's resolution of the instant motions.

Lear employed Warner from approximately 2000 through February 20, 2015, when he was terminated.  Lear asserts that Warner's February 2015 termination was based on shop rule violations and his disciplinary history.  Warner's record contains 15 documented disciplinary actions between 2003 and 2013, including eight that resulted in multi-day "disciplinary layoff[s]."  D. Br. 5.  The predicate incidents to these disciplinary actions included abusive language to an employee or supervisor, refusal or failure to do a job assignment, and various offenses related to tardiness or absence from his workstation.

In the months leading up to his termination, Lear repeatedly disciplined Warner for returning late from breaks.  At the time, Warner objected that Lear's decision to shorten

---

[1]In deciding Lear's summary judgment motion, the court views the evidence in the light most favorable to Warner as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

breaks (from two 15-minute breaks and one 30-minute meal period to two 10-minute breaks and one 20-minute meal period) was a violation of the collective bargaining agreement. Warner therefore maintained that he was not obligated to conform to the new break schedule. After Lear and the union (International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and UAW Local 129 ("UAW")) settled a grievance regarding the break schedule, and Lear informed Warner, Warner continued to incur disciplinary actions for being absent from his workstation.

Finally, Lear gave Warner a written Final Warning that the company would continue to implement progressively more serious discipline if Warner continued to be late or absent from his workstation.  On January 27, 2015 a production supervisor imposed a 15-day disciplinary layoff on Warner for leaving his workstation without authorization.  Warner had requested a bathroom break, but he then left his workstation before a relief employee was found, causing production to stop on the line.  When Warner returned from this suspension on February 17, 2015, he punched in and then spent approximately two hours in the union office instead of reporting to a superintendent for a work assignment in accordance with procedure.  Based on this incident and Warner's disciplinary record, Lear terminated him effective February 20, 2015.

Warner alleges, however, that he was terminated in retaliation for a prior lawsuit that he filed against Lear.  In 2013 Warner sued Lear alleging violations of Title VII, but he voluntarily dismissed the case in October 2014.  Warner's summary judgment evidence indicates that one of his supervisors, who worked with him for four or five months, did not

have any trouble with him.  Warner's evidence also indicates that, on one occasion in 2013, he was disciplined for taking a long restroom break, but other employees who engaged in similar behavior were not disciplined.

Following his termination, Warner filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Lear had disciplined him, and ultimately discharged him, in retaliation for his lawsuit and other grievances.  In the "DISCRIMINATION BASED ON" section, Warner checked only the "RETALIATION" box.  D. App. 110.  The EEOC dismissed the charge and notified Warner of his right to sue. Warner's separate National Labor Relations Board charge was also dismissed, and union grievances related to Warner's termination were denied at arbitration.

Warner brought this lawsuit against Lear, UAW, and the FMCS.  It is also possible that he intends to sue an individual FMCS mediator, identified in his first amended complaint as "John Doe mediator/Agent."  *E.g.*, 1st Am. Compl. ¶ 6.  After the court granted UAW's motion to dismiss, Warner opted not to replead his claims against UAW.  FMCS appears to have been served with process, but has not appeared or participated in this case.  Warner's first amended complaint (his operative pleading in the case) identifies the mediator simply as "John Doe mediator/Agent," and he has not been served with process.  Warner's counsel withdrew in September 2016, and, since then, Warner has proceeded *pro se*.

The following motions are pending for decision: Lear's November 1, 2016 motion for summary judgment; Warner's November 18, 2016 motion to disqualify Lear's counsel; Lear's December 5, 2016 motion to strike portions of Warner's summary judgment appendix;

Warner's December 23, 2016 motion to appoint counsel; and Warner's February 24, 2016

motion for entry of a revised scheduling order.

## II

As a threshold matter, Lear moves to strike six of the 18 exhibits in Warner's

summary judgment appendix on the grounds, *inter alia*, that they are unsworn.  Warner has

not responded to the motion to strike.  The court agrees that Warner's exhibits 5, 6, 10, and

18 are unsworn.  The other two exhibits cited in Lear's motion to strike (exhibits 9 and 13)

are completely absent from the appendixes that Warner filed electronically and provided to

the court on paper.  Accordingly, Lear's motion to strike is granted.  *See, e.g., Okoye v. Univ.

of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001) (holding that unsworn

statements are not competent summary judgment evidence).

## III

Before addressing Lear's motion for summary judgment, the court will consider

Warner's motion to modify the scheduling order, in which he seeks relief so that he can

conduct additional fact discovery.  Because Warner filed his motion while Lear's summary

judgment motion was pending, the court will consider Warner's motion both under the Fed.

R. Civ. P. 16(b)(4) good cause standard and as a motion for additional discovery under Rule

56(d).

### A

Rule 16(b)(4) governs a party's request to extend the discovery period after the

deadline established by a scheduling order has elapsed.  *Cartier v. Egana of Switz. (Am.)*

*Corp.*, 2009 WL 614820, at \*2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent. *Id.* The good cause standard "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 Fed. Appx. 483, 487-88 (5th Cir. 2013) (per curiam) (quoting *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). "In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier*, 2009 WL 614820, at \*3 (citing *S & W Enters.*, 315 F.3d at 536). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at \*3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

Warner contends that good cause exists to reopen discovery because, although discovery was taken by interrogatory within the original period, he has not completed discovery. Warner maintains that, because he was unaware of the deadline, he did not immediately pursue discovery after his counsel withdrew.

Even considering that Warner is proceeding *pro se*, and construing his motion liberally, the court concludes that he has not met the Rule 16(b)(4) good cause standard to reopen discovery. Discovery in this case originally closed on October 1, 2016. Warner's counsel withdrew on September 12, 2016. As an explanation for his failure to complete

discovery, Warner offers only his counsel's withdrawal and Warner's subsequent confusion. But his counsel's withdrawal was only approved in the final month of the discovery period. And Warner's motion does not specify what information he seeks, or describe its importance. Considering the good cause standard holistically, the court denies Warner's motion under the Rule 16(b)(4) good cause standard. *See Serv. Temps*, 2009 WL 3294863, at *3.

B

Because Warner filed his motion while Lear's summary judgment motion was pending, the court will also treat the motion as if it had been filed under Rule 56(d).

Rule 56(d) "provides a mechanism for dealing with the problem of premature summary judgment motions." *Parakkavetty v. Indus Int'l Inc.*, 2004 WL 354317, at *1 (N.D. Tex. Feb. 12, 2004) (Fitzwater, J.) (citing *Owens v. Estate of Erwin*, 968 F. Supp. 320, 322 (N.D. Tex. 1997) (Fitzwater, J.) (referring to former Rule 56(f)). Under Rule 56(d), the court can "(1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order," provided the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d). Rule 56(d) functions as a "safe harbor" that has been "built into the rules so that summary judgment is not granted prematurely." *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987) (referring to Rule 56(f)). It is "usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Id.* Rule 56(d) offers relief where the nonmovant has not had a full

- 7 -

opportunity to conduct—not to complete—discovery.  The two concepts are distinct.  *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (per curiam) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1985)) (rejecting nonmovant's contention that district court abused its discretion by failing to permit him to complete discovery before granting summary judgment, and holding that "Rule 56 does not require that discovery take place before granting summary judgment").

"[Rule 56(d)] motions are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).  Nevertheless, to warrant a continuance for purposes of obtaining discovery, "a party must indicate to the court by some statement . . . why [it] needs additional discovery and how the additional discovery will create a genuine issue of material fact." *Stults v. Conoco, Inc.*, 76 F.3d 651, 657-58 (5th Cir. 1996) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)) (internal quotation marks omitted).  It is not sufficient for a summary judgment nonmovant to allege that discovery is incomplete or that discovery will produce needed but unspecified facts. *See Washington*, 901 F.2d at 1284-85.  The party must demonstrate "how the additional time will enable [it] to rebut the movant's allegations of no genuine issue of fact." *Id.* at 1286 (quoting *Weir v. Anaconda Co.*, 773 F.2d 1073, 1083 (10th Cir. 1985)) (internal quotation marks omitted).  A nonmovant is not entitled to a continuance if it "fail[s] to explain what discovery [it] did have, why it was inadequate, and what [it] expected to learn from further discovery" and gives only "vague assertions of the need for additional discovery." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) (in part quoting *Reese v. Anderson*, 926 F.2d 494,

499 n.5 (5th Cir. 1991)) (internal quotation marks omitted).

Construing Warner's motion liberally, his acknowledgment that the parties have already conducted document discovery may suggest that Warner now wants to take depositions. Warner's motion, however, does not contend that he has had insufficient time for discovery. Nor does it describe what information he seeks, or how it will raise a fact issue on Lear's pending summary judgment motion.

The court concludes that Warner's motion does not meet the standard for ordering additional discovery under Rule 56(d). *See Washington*, 901 F.2d at 1284-85. Because, as set out above, it also does not meet the Rule 16(b)(4) good cause standard to modify a scheduling order, the court denies Warner's motion.

## IV

The court now turns to Lear's motion for summary judgment. When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512

F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory

where the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

V

Lear contends that it is entitled to summary judgment dismissing Warner's retaliation

claim.

A

Title VII prohibits employers from retaliating against employees who engage in a

protected activity.  42 U.S.C. § 2000e-3(a).[2]  Because Warner relies on circumstantial

evidence to support his retaliation claim, he must proceed under the familiar *McDonnell*

*Douglas* burden-shifting framework.  *See, e.g., Royal v. CCC & R Tres Arboles, L.L.C.*, 736

F.3d 396, 400 (5th Cir. 2013) ("A retaliation claim that is premised on a pretextual rationale

for dismissal is analyzed under the *McDonnell Douglas* framework.").

Warner must first demonstrate a prima facie case of retaliation by showing that (1) he

engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal

link existed between the protected activity and the adverse employment action.  *See, e.g.*,

*Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005)

---

[2]42 U.S.C. § 2000e-3(a) provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

- 10 -

(Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).  As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but[-]for" causation that a jury must find.  *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing this prima facie case burden as "minimal").

If Warner establishes a prima facie case, the burden shifts to Lear to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action taken.  *See Walker*, 2005 WL 2278080, at *9.  This burden is one of production, not of proof.  *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).  It involves no credibility assessments.  *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

If Lear meets its production burden, the burden shifts back to Warner to produce evidence that would enable a reasonable jury to find that retaliation for Warner's protected conduct, rather than Lear's proffered legitimate, nonretaliatory reason, was the "but-for cause" of the adverse employment action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g., Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An

employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-34)). "In order to avoid summary judgment, [Warner] must show 'a conflict in substantial evidence' on the question of whether [Lear] would not have taken the action 'but for' the protected activity." *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

## B

The court assumes *arguendo* that Warner has established a prima facie case. The burden now shifts to Lear to articulate a legitimate, nonretaliatory reason for Warner's suspensions and termination. Lear has met this burden by pointing to Warner's rule violations, such as being absent from his workstation without authorization, and failing to report to a superintendent on the day he returned from his suspension. The burden now shifts to Warner to raise a fact issue on whether retaliation was the but-for cause of his suspensions and termination. *See id.*

## C

Warner contends that Lear's adverse employment actions against him were taken in retaliation for his protected actions (his prior Title VII lawsuit against the company), not as legitimate discipline for rule violations. He maintains that other employees committed similar rule violations without being disciplined, and that management instructed his supervisors to target him for disciplinary action. Warner also posits, in relation to his failure to report to a superintendent on the day he returned from his suspension, that employees commonly went to the union office upon return from an absence, and that management could

- 12 -

have easily called him over the PA system to report to a designated area.  And Warner contends that he disputed a denial of workers' compensation benefits on the day of his return to work, just before his termination.

Warner's support for these contentions consists of evidence that one of his supervisors, who worked with Warner for four or five months, did not have any trouble with him; and that on one occasion in 2013, Warner was disciplined for taking a long restroom break, but other employees who engaged in similar behavior were not disciplined.

In response, Lear contends that it suspended and then terminated Warner under its progressive discipline policy for violations of shop rules.  Lear maintains that it had no hostile reaction to Warner's 2013 lawsuit, which was filed and then dismissed well before Warner's suspension and dismissal in 2015.  And Lear maintains that its proffered reasons for the adverse employment actions are undisputed: Warner left his workstation without authorization, leading to his January 2015 suspension, and Warner failed to report to a superintendent for hours after his return to work in February 2015, leading to his termination.

The court concludes that Warner has not produced evidence that would enable a reasonable jury to find that retaliation was the but-for cause of the adverse employment actions taken against him.  Lear's evidence documents a long history of rule violations, including those that immediately led to Warner's final 15-day suspension and his termination. Warner's evidence is insufficient to enable a reasonable jury to find that Lear tolerated similar behavior from other, similarly-situated employees, or that Lear had any intent to retaliate against Warner because of his protected activity.  Accordingly, Lear is

entitled to summary judgment on Warner's retaliation claim.  *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 661 (5th Cir. 2012) (holding that but-for causation was not established when employer had undisputed, legitimate reason for termination).  The court dismisses Warner's Title VII retaliation claim with prejudice.

VI

The court now turns to Warner's race discrimination and hostile work environment claims.  Lear contends that these claims should be dismissed for failure to exhaust administrative remedies.

A

"It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted his administrative remedies by filing a charge of discrimination with the EEOC."  *Kretchmer v. Eveden, Inc.*, 2009 WL 854719, at *3 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Bernard v. ATC VanCom*, 2005 WL 139110, at *2 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J.)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010).  "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."  *Taylor*, 296 F.3d at 378-79.  "This requirement serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved."  *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44

(1974); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

"The lawsuit that follows [a timely charge with the EEOC] is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." *Id.* (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990)). "In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Id.* (quoting *Sanchez*, 431 F.2d at 466). This test strikes a balance between two competing Title VII policies.

> On the one hand, because the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims. Indeed, a less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance.

*Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) (internal quotation marks, citations, emphasis, and brackets omitted).

## B

Lear contends that Warner's race discrimination and hostile work environment claims were not encompassed by the EEOC charge filed after his termination in 2015, and therefore Warner has not exhausted administrative remedies with regard to these claims. Lear posits that Warner only checked the box for retaliation in his 2015 EEOC charge form, and did not check the available box for race discrimination. And Lear maintains that, in the form's

"PARTICULARS" section, Warner only described retaliation for his previous lawsuit and grievances—not racial discrimination or a hostile work environment.  Warner's entry in the section reads:

> I began my employment with Respondent on or about August 10, 2000.  My most recent position was Plant Wide Absentee Replacement Operator.  During my employment, I have filed grievances against Respondent, and have a pending lawsuit against Respondent over workplace issues.  Subsequently, I was placed on a 15 day suspension, and was eventually discharged shortly after.
>
> I believe I have been discriminated against because in retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

D. App. 110.

In response, Warner posits that he filed union grievances about "retaliation, discrimination, and hostile work environment" that were ignored by the union and Lear.  P. Br. 2.  Warner also maintains in his brief that "[r]ace discrimination can not be ruled out in Plaintiff's charge because the evidence shows reasonable cause."  P. Br. 6.

C

The court concludes that Warner did not exhaust his administrative remedies with respect to race discrimination and hostile work environment claims.  Although failing to check a box on an EEOC charge is not of itself conclusive evidence of what claims the charging party intended to bring, Warner's charge also lacks factual allegations relating to race discrimination or hostile work environment.  Because "the facts considered in an investigation for those claims would be different from those considered in a claim for

[retaliation]," Warner's claims of race discrimination and hostile work environment are not "reasonable consequence[s] of the claims set forth in his EEOC charge." *Hayes*, 2004 WL 1283965, at *5 (internal quotation marks omitted). And although Warner refers to his union grievances, only an EEOC charge can satisfy Title VII's exhaustion requirement. *See Taylor*, 296 F.3d at 378-79. Accordingly, the court dismisses these claims with prejudice for failure to exhaust administrative remedies.

## VII

The court now turns to Lear's contention that Warner's civil conspiracy claim should be dismissed.

Warner alleges in his first amended complaint that Lear and UAW conspired to deprive him of his "substantive due process rights under [§ 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("LMRA")] and the collective bargaining agreement." 1st Am. Compl. ¶ 17. Lear maintains that, while it is not clear whether Warner alleges a federal conspiracy claim for violation of LMRA § 301, or a Texas-law claim for civil conspiracy, in either case the claim fails.

First, Lear correctly posits that no recognized federal cause of action exists under § 301 of the LMRA for conspiracy to violate a collective bargaining agreement. "A conspiracy to violate a collective bargaining agreement does not, without more, state a cause of action under section 301 sufficient to confer jurisdiction on a federal court." *Carpenters Local Union No. 1846 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 502 (5th Cir. 1982) (citing *Abrams v. Carrier Corp.*, 434

F.2d 1234, 1253 (2d Cir. 1970) ("[T]here exists no federal statute conferring independent jurisdiction upon the federal courts for claims of civil conspiracy in the labor relations field[.]")).

Second, Lear contends that Warner likewise cannot state a Texas-law claim for civil conspiracy. Lear maintains that because Warner alleges a conspiracy to deprive him of his rights under the collective bargaining agreement, his claim would require the court to interpret the collective bargaining agreement. And Lear posits that any state-law claim that depends on interpretation of a collective bargaining agreement is preempted by federal labor law. "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citation omitted); *see Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) ("Preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement.").

Warner has not responded to Lear's arguments. Although Warner's failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman*

- 18 -

*v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp.*

*v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

> [i]f a party fails . . . to properly address another party's assertion
> of fact as required by Rule 56(c), the court may . . . (2) consider
> the fact undisputed for purposes of the motion [and] (3) grant
> summary judgment if the motion and supporting
> materials—including the facts considered undisputed—show
> that the movant is entitled to it[.]

Rule 56(e)(2), (3).

The court concludes that Warner's civil conspiracy claim must be dismissed.  Federal

law does not recognize a cause of action for conspiracy to violate a collective bargaining

agreement.  *See Carpenters*, 690 F.2d at 502.  And by failing to respond to Lear's contention

that Warner's Texas-law conspiracy claim is preempted, he has not raised a genuine issue

of material fact regarding whether resolution of his state-law claim is substantially dependent

on an analysis of the terms of the collective bargaining agreement, and therefore preempted

under federal labor law.  Accordingly, the court dismisses Warner's civil conspiracy claim

with prejudice.

## VIII

The court now turns to the other pending motions, the first of which is Warner's

motion to disqualify Lear's counsel.

## A

Motions to disqualify are governed by standards developed under federal law.  *In re*

*Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992).  The ethical codes that are accepted

among members of the legal profession do, however, carry great weight in the court's evaluation of the conduct of an attorney. *See FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311-12 (5th Cir. 1995) (noting that local, state, and national rules for professional conduct are relevant to the court's inquiry); *In re Dresser*, 972 F.2d at 543 (requiring court to "consider the motion governed by the ethical rules announced by the national profession in the light of the public interest and the litigants' rights."). When this court decides a motion to disqualify counsel, it must make findings of fact and conclusions of law. *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977).

B

Warner contends that Lear's counsel, Christopher Mazzoli, Esquire ("Mazzoli"), has represented both Lear and the UAW, leading to a conflict of interest. Warner appears to object specifically to Mazzoli's representation of Lear in the arbitration of union grievances, where the union selected its representative and Warner's retained attorney was not permitted to participate. At different points in his brief, Warner argues that Mazzoli engaged in a dual representation that created conflicts of interest, and, alternatively, that Mazzoli represented Lear while a nonlawyer represented Warner's interests, putting Warner at an unfair disadvantage.

Lear responds that there is no basis to disqualify Mazzoli. Lear maintains that Mazzoli has represented only Lear in this action, and has never represented or sought to represent either Warner or UAW—leaving no possibility of a conflict of interest. And Lear contends that, despite Warner's dissatisfaction with the arbitration procedure, it is not

unlawful for a union to rely on a nonlawyer representative in arbitration. *See Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1180 (7th Cir. 1995) ("[A union's] decision to disallow the presence of an independently-retained attorney in a particular case is not, standing alone, enough to show that the union acted arbitrarily.")

## C

The court finds that no evidence supports disqualifying Mazzoli. Warner has presented no evidence that Mazzoli represented or sought to represent any party but Lear in this case. Neither Warner's conflict-of-interest theory nor his objection to the union's using a nonlawyer representative during arbitration establishes that Mazzoli should be disqualified under any applicable ethical standard. *See In re Dresser*, 972 F.2d at 543. Accordingly, the court denies Warner's motion to disqualify counsel.

## IX

The court next turns to Warner's motion for the court to appoint counsel to represent him.

"[T]he appointment of counsel in a civil case is a privilege and not a constitutional right. It should be allowed in civil actions only in exceptional cases." *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). Appointment of counsel for a civil litigant rests within the sound discretion of the trial court. *See id.*

Warner contends that, after disagreements arose with his former counsel, he has been unable to retain counsel. He also states that he can no longer afford legal fees due to being terminated from his job and paying legal fees to his former counsel.

The court concludes in its discretion that Warner is not entitled to appointed counsel in this case.  He has not shown why this case is exceptional or how counsel is necessary to present meritorious issues to the court.  *See id.*  Accordingly, Warner's motion is denied.

X

Warner's first amended complaint names FMCS as a defendant.  FMCS appears to have been served with process, but has not appeared or participated in this case.  FMCS is a federal agency and therefore enjoys sovereign immunity from suit unless Congress has specifically provided otherwise.  *See Capobianco v. Brink's, Inc.*, 1980 WL 2089, at *1 (E.D.N.Y. June 25, 1980) (dismissing suit against FMCS on ground of sovereign immunity). The court is aware of no statute that would permit Warner to sue FMCS.  *See id.* (citing agency's establishing legislation, 29 U.S.C. § 171 *et seq.*).

Sovereign immunity of the federal government is jurisdictional and may be raised *sua sponte*.  *See Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007).  Indeed, "'federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary.'"  *Id.* (quoting *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997)).

Accordingly, the court raises *sua sponte* that the FMCS is immune from this lawsuit and that Warner's action against the FMCS should be dismissed.  Within 28 days of the date this memorandum opinion and order is filed, Warner may file a brief that demonstrates why the FMCS is not immune from this lawsuit.  If he does not respond, or his response fails to demonstrate why the FMCS is not immune, the court will enter judgment dismissing his

- 22 -

action against the FMCS.

## XI

As noted above, it is possible that Warner also intends to sue an individual FMCS mediator, identified in his first amended complaint as "John Doe mediator/Agent." Although when Warner filed his first amended complaint he removed Doe from the caption, the pleading still contains allegations involving Doe, such as that Doe interfered with Warner's contractual rights. To the extent that Warner continues to allege claims against Doe, Warner must identify and serve him with process.

The Federal Rules of Civil Procedure do not authorize Warner to maintain suit indefinitely against a fictitious defendant. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1321, at 382 (3d ed. 2004 & Supp. 2016). Discovery has already closed in this case, indicating that Warner has had adequate time to investigate Doe's identity. But Warner has yet to identify Doe, "and thus has yet to serve [him], clearly in violation of the 120-day window provided by Rule 4(m)." *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 345 (6th Cir. 2007).

Accordingly, the court advises Warner that, unless within 28 days of the date this memorandum opinion and order is filed, he seeks leave to amend and names a specific person in place of "John Doe mediator/Agent," his action against Doe will be dismissed. *See id.*; *Perez v. Dupuch*, 1998 WL 760282, at *1 (N.D. Tex. Oct. 22, 1998) (Fitzwater, J.) (dismissing action against Doe defendant, with possibility of identification and repleading).

- 23 -

* * *

For the reasons explained, the court grants Lear's motion to strike exhibits, grants Lear's motion for summary judgment, denies Warner's motion to disqualify opposing counsel, denies Warner's motion to appoint counsel, and denies Warner's motion to modify the scheduling order.  By Rule 54(b) final judgment filed today, the court dismisses Warner's action against Lear.

Within 28 days of the date this memorandum opinion and order is filed, Warner may file a brief that demonstrates why the FMCS is not immune from this lawsuit.

The court will dismiss Warner's action against "John Doe mediator/Agent" unless, within 28 days of the date this memorandum opinion and order is filed, Warner seeks leave to amend and names a specific person in place of this Doe defendant.

**SO ORDERED**.

March 9, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE